Stuart R. LUNDY, et al., Plaintiffs,

v.

INTERFIRST CORPORATION, et al., Defendants.

The FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,

v.

EAGLE PROPERTIES, LTD., et al., Defendants.

Misc. Nos. 84–0734, 84–0297.

United States District Court, District of Columbia.

Feb. 22, 1985.

As Amended March 7, 1985.

Stephen A. Whinston, Berger & Montague, Philadelphia, Pa., Sussman, Godfrey & McGowan, Houston, Tex., Ann C. Yahner, Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., for plaintiffs in Misc. No. 84–0734.

Eugene M. Katz, L. Robert Griffin, Washington, D.C., for defendant Comptroller of the Currency.

George P. Williams, Asst. U.S. Atty., Washington, D.C., for plaintiff in Misc. No. 84–0297.

Seagal V. Wheatley, Leo O. Bacher, Jr., Oppenheimer, Rosenberg, Kelleher & Wheatley, San Antonio, Tex., Plato Cacheris, Hundley & Cacheris, Washington, D.C., Carl D. Adams, Dallas, Tex., Jimmie B. Todd, Odessa, Tex., Dewey R. Hicks, Jr., Brice & Barron, Dallas, Tex., Steven M. Schneebaum, Andrew S. Newman, Patton, Boggs & Blow, Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

These two matters involve efforts by separate parties engaged in banking litigation in federal courts in Texas to compel the Comptroller of the Currency to produce documents. Because of the similarity of the subject matter, the two actions, which were filed within days of each other, are being discussed in this single Memorandum.

### *Lundy*

Presently before the Court in Misc. No. 84–0734 is plaintiffs' motion to enforce a third-party subpoena *duces tecum* requiring the Comptroller of the Currency to produce documents relating to the Comptroller's bank examination of InterFirst Bank of Dallas (IFBD), the flagship bank of a bank holding company, the principal defendant. The motion will be granted in part and denied in part.

The subpoena to the Comptroller had its genesis in defendants' refusal to produce documents requested by plaintiffs in the main lawsuit, a securities fraud class action pending in the United States District Court for the Northern District of Texas. Defendants asserted numerous grounds for their refusal to comply with plaintiffs' document production request, among them that documents relating to federal bank examinations are privileged.[1] Plaintiffs, who assert that the information contained in these reports is essential to prove the *scienter* element of their case, thereupon attempted to obtain the desired documents from the Comptroller, the third party assertedly protected by and capable of waiving the privilege invoked by defendants.

When efforts to obtain the desired information through administrative processes proved unsuccessful,[2] plaintiffs on November 21, 1984 subpoenaed the requested documents from the Comptroller. The Comptroller has resisted the subpoena principally on the ground of the "intragovernmental opinion" privilege.

In considering the instant motion to compel, it is important to distinguish among the various types of documents the production of which plaintiffs seek. Plaintiffs seek essentially three types of documents: submissions by IFBD to the Comptroller's office; Comptroller's office communications to IFBD; and various sorts of internal Comptroller's office documents not sent to IFBD.

As the Comptroller's counsel indicated at a February 15, 1985 hearing on the

---

1. See Defendants' Objections to Plaintiffs' First Request for Production of Documents at 6, General Objection No. 9.

2. On April 25, 1984, plaintiffs submitted to the Comptroller a request to release documents pursuant to 12 C.F.R. § 4.19, the regulation establishing the procedure for obtaining documents from the Comptroller. Discussions with Comptroller's Office personnel led to the submission of revised 4.19 requests.

motion, the Comptroller is not asserting any privilege with respect to documents submitted by IFBD to him in the course of his regular bank examination.[3] There is therefore no reason why the Comptroller should not be compelled to turn over such documents in compliance with the subpoena. It is, of course, true that bank submissions to the Comptroller are confidential.[4] However, defendants, which are presumably the intended beneficiaries of this confidentiality, have filed no papers opposing this motion. Furthermore, the protective order issued in the main action by Judge Barefoot Sanders[5] is adequate to prevent the sort of public disclosure of information that would undermine confidence in the bank, invade debtors' privacy, or imperil the voluntary provision of information by regulated banks that is essential if the Comptroller's monitoring program is to be effective. Accordingly, the Court sees no reason to deny plaintiffs' motion with respect to documents submitted by IFBD to the Comptroller, and it will grant the motion with respect to item 2(a–e) of the subpoena.

With regard to the other subpoenaed documents, the Court concludes that the motion must be denied at this time. The subpoena is quite broad and the documents requested are voluminous.[6] The Comptroller has asserted at least colorable claims that a significant portion of the remaining documents is protected from disclosure by the intragovernmental opinion privilege.[7] Plaintiffs clearly cannot show the requisite strong interest in obtaining the documents from the Comptroller,[8] since they may be able to obtain the necessary information from the defendants in the main action—where they have not moved to compel and where discovery is ongoing and trial is not imminent.

The Court concludes that the prudent course is not to force the Comptroller, who is not a party to the main action, to engage in a broad-ranging search of its files to produce numerous documents which will then have to be further examined by the Court *in camera*.[9] When discovery has become more focused as a result of the proceedings in the federal court in Texas, there will be time enough to consider

3. See also Comptroller's Opposition at 12. Nor could the Comptroller properly assert such a privilege. The documents submitted by IFBD, a private corporate entity, obviously cannot be characterized as intragovernmental communications. Nor do such factual reports contain opinions. Thus, such documents satisfy neither prong of the intragovernmental opinion privilege. See generally, *In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 580–86 (E.D.N.Y.1979); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318 (D.D.C.1966), *aff'd,* 384 F.2d 979 (D.C.Cir.1967).

4. See *Bank of America v. Douglas,* 105 F.2d 100, 103–04 (D.C.Cir.1939); 18 U.S.C. § 1906 (providing that bank examiner disclosure of borrowers' identities or collateral is a crime unless done pursuant to, *inter alia,* court order).

5. See Plaintiff's Exhibit G.

6. Neither plaintiffs who have not seen the subpoenaed documents, nor the Comptroller, who has not searched for and collated all of them, know precisely how many documents are involved. Both sides agree, however, that a large number of documents is involved.

7. For example, subpoena item 3 requests "All documents generated by the [Comptroller's Of-

fice] referring, or relating to, or prepared in connection with, the examinations of IFBD by the [Comptroller's Office] during the period which were not sent to InterFirst or IFBD." Such documents are certainly reasonably characterized as intergovernmental, and it is undisputed that they include opinions, not merely factual statements.

8. In determining whether to release requested documents protected by the intragovernmental opinion privilege, which is only a qualified privilege, a court must examine the documents *in camera* and conduct a balancing test, weighing the competing private and governmental interests. See *In re Franklin National Bank, supra,* 478 F.Supp. at 582. Among the factors typically considered by courts in conducting such balancing tests are: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the importance of the litigation and the issues involved; (4) the government's role, if any, in the litigation; and (5) the potential chilling of governmental employees' expression of candid analytical opinions. *Id.* at 583.

9. See *supra* note 8.

whether and to what extent the Comptroller should be required to produce the documents. For these reasons, the motion will be denied with respect to all documents other than those in item 2(a–e) of the subpoena.

## II

### *Eagle Properties*

The *Eagle Properties* case (Misc. No. 84–0297) is like the *Lundy* case in that the Comptroller of the Currency is being asked to produce documents in the course of pretrial discovery of banking litigation in federal court in Texas. However, that case differs from the *Eagle Properties* case in at least three significant respects. First, in *Lundy*, the documents are being sought at a relatively early stage of discovery, with trial a long time off; *Eagle Properties*, by contrast, is due to proceed to trail in Texas next Monday. Second, in *Lundy*, the government is truly a third party—an innocent bystander, so to speak; in *Eagle Properties*, the government, through the Federal Deposit Insurance Corporation, is the plaintiff in a $25 million action, and the defendants—which are seeking the discovery—are defending on the basis of fraud which, according to them, may be attributed to the government. Third, in *Lundy*, the papers being sought from the Comptroller are numerous and no real attempt has been made either to exhaust other sources or to pinpoint the need for the Comptroller's documents; in *Eagle Properties*, only 72 documents are at issue

and the requesting parties have made a precise and persuasive showing of necessity.[10]

Defendants in the *Eagle Properties* case filed a motion on February 7, 1985 to compel the testimony of Clifton Poole and Clydell McSpadden, two employees of the Office of the Comptroller (OCC), and to compel the Comptroller to produce for inspection and copying certain documents subpoenaed by defendants. On February 11, 1985, the Court held a hearing on defendants' motion, at which counsel for the Comptroller refused to present any arguments on the merits of the controversy, stating that it would take the Comptroller a week to prepare pleadings justifying the assertion of the various privileges. In view of the imminence of the trial in the underlying action,[11] and the Comptroller's longstanding knowledge of defendants' request for the documents at issue,[12] the Court granted the defendants' motion and ordered the Comptroller to submit to discovery forthwith. The Court's order, however, specifically provided that the documents released to defendants would be subject to a protective order entered by the U.S. District Court for the Western District of Texas, and that, to the extent that disputes remained regarding claims of privilege or otherwise, they would be referred to the Honorable Lucius Bunton, U.S. District Judge, Western District of Texas.

Notwithstanding this Court's Order of February 11, 1985, the Comptroller refused to produce the documents. Accordingly,

---

**10.** The claim is made that when the requesting parties invested in the Texas bank involved in the underlying litigation, they were informed that the Comptroller of the Currency had pronounced the bank to be in sound condition when, according to those parties, the Comptroller had already determined that this was not so.

**11.** Trial is scheduled for February 25, 1985; pretrial was originally scheduled for February 15, 1985, and it was subsequently postponed to February 21, 1985.

**12.** Defendants first served their discovery requests for information upon the Comptroller in the Spring of 1984. According to the defend-

ants' uncontradicted assertion, counsel for the OCC stated at that time that the Comptroller needed five to six weeks in which to make an internal evaluation of defendants' request. When the OCC responded six months later, it asserted no privilege. Thereafter, defendants brought a motion to compel in this Court which was granted by Judge Richey on November 28, 1984. 105 F.R.D. 12. Pursuant to this order, the Comptroller was required to provide to defendants all documents relating directly to a sale/leaseback transaction which were not protected by privilege.

**504**

the Court, pursuant to a request filed by defendants, issued an order on February 12, 1985, requiring the Comptroller to appear to show cause why he should not be held in contempt. On the same day, the Comptroller filed a motion requesting the Court to reconsider its order of February 11, 1985, and moved for a stay of that order. Both of these motions were ultimately denied on February 15, 1985.[13]

The Comptroller then filed a motion for a stay of this Court's previous orders with both this Court and the Court of Appeals, pending review by the latter of the Comptroller's petition for a writ of mandamus. This Court denied the motion, but stayed its orders until Tuesday, February 19, 1985, in order to afford the Court of Appeals an opportunity to consider the matter. On February 19, 1985, that court denied both the Comptroller's motion for a stay and his petition for a writ of mandamus, stating that it assumed that the Comptroller would have the opportunity to demonstrate at the scheduled show cause hearing why the subpoenaed documents are privileged.

The following day, this Court held its show cause hearing. Again, the Comptroller raised jurisdictional arguments which this Court had already expressly rejected and which the Court of Appeals had implic-

itly rejected.[14] When finally pressed by the Court to address the merits, the Comptroller's counsel merely stated that, with but three exceptions, the documents sought by defendants were privileged and that he was prepared to submit these documents for this Court's *in camera* review.[15]

■■■ In order to assert the deliberative process and work product privileges, both of which are qualified, three requirements must be satisfied. First there must be a formal claim of privilege by the head of the department which has control over the matter, after actual personal consideration by that officer. Second, the agency must demonstrate precise and certain reasons for preserving the confidentiality of the governmental communication. Finally, the agency must designate and describe those documents claimed to be privileged with sufficient detail to allow a reasoned determination as to the legitimacy of the claimed privilege. See *Resident Advisory Board v. Rizzo*, 97 F.R.D. 749, 752–53 (E.D.Pa.1983), and cases cited therein. The Court further notes that because these privileges obstruct the search for truth and because their benefits are indirect and speculative, they must be strictly construed. Such a narrow construction is particularly appropriate in a case, such as this, where the

---

13. On February 14, 1985, the Court issued an order in which it *sua sponte* postponed the show cause hearing, which was scheduled for February 15, 1985, so that defendants would have an opportunity to respond to the Comptroller's motions, and so that the Comptroller would have adequate time to prepare for the show cause hearing in the event that his motion for reconsideration was denied.

14. At the February 11 hearing, the Comptroller argued that this Court did not have jurisdiction and that the appropriate tribunal for the resolution of this dispute was the United States District Court in the Northern District of Texas, where the subpoenas issued. Defendants did, in fact, bring their motion to compel in that court before coming here. However, the Comptroller took the opposite position there, arguing that

Defendants should not be permitted to forum shop. The parameters of this discovery were set in Washington, D.C. and the OCC is headquartered there. Consequently, this action

should have been brought in Washington, D.C. ... any action to compel lies in Washington, D.C.

Based on this argument and the fact that the two OCC employees whom defendants sought to depose refused to testify on the basis of 12 C.F.R. § 4.19 (which prohibits current and former employees from testifying with respect to information obtained in or resulting from their official capacities and from furnishing documents *without the prior written authorization of the Comptroller*), the Magistrate in Texas denied the defendants' motion to compel, stating that "[t]his dilemma and the discovery impasse which has occurred can be resolved by a court having jurisdiction over the Comptroller ...," *i.e.,* this Court.

15. The Comptroller claimed that all of the documents are privileged under the deliberative process privilege, and that some are also protected by the work-product privilege and the attorney-client privilege.

government's claims of privilege are so patently inadequate.

■ The Comptroller's manner of invoking these privileges in this case was entirely inadequate and defective. It was not until nine days after his first appearance before this Court, several months after receiving the defendants' request for documents and information, after two orders to compel were entered against him, and after a hearing to show cause had been convened, that the Comptroller finally took the necessary steps to satisfy the first of these three requirements. However, he has to this day failed entirely to satisfy the remaining two requirements.[16] Rather, he has made only the bare and unsupported assertion that the work product and attorney-client privileges apply to a number of documents and that the deliberative privilege applies to all of them.[17] Moreover, the Comptroller has made no attempt to separate out and release to defendants those portions of the withheld documents which are not privileged. He has instead withheld entire documents which contain any deliberative or other protected material.

On the basis of the patent insufficiency of the Comptroller's showing, the Court would have been fully justified in summarily rejecting all the claims of privilege for failure to comply with the most elementary procedural and substantive requirements. See, *e.g.*, *Resident Advisory Board v. Rizzo*, 97 F.R.D. 749 (E.D.Pa.1983). However,

in order to attempt to safeguard legitimate privileges even though the Comptroller's attorneys had failed to do so, the Court decided to review the documents *in camera* to determine on its own whether such privileges could somehow be discerned. In reviewing the documents, the Court first determined whether the Comptroller's claimed privilege actually applies. If it found that the documents were privileged under either the deliberative process privilege or work-product privilege, it then balanced the government's interest in nondisclosure against the defendants' interest in and need for the information.[18] The Court's analysis and its rulings on the 72 documents at issue are found in the Appendix [19] to this Memorandum.[20] An appropriate order requiring the Comptroller to make the nonprivileged documents forthwith available to the requesting party is being entered simultaneously herewith.

**16.** At the hearing on February 20, 1985, the Court was informed that, notwithstanding the Comptroller's assertion on February 11, 1985, that he would require one week to provide justification for his claims of privilege, his attorneys had been unable to find the time to do so in the nine days which had elapsed since then. (It may be observed that the Court, with the assistance of its law clerks, conducted an inspection and analysis of the documents between 5:00 p.m. on February 20 and 10:00 a.m. on February 22. See Appendix.)

**17.** Specifically, the government states that it "hereby asserts the attorney work product privilege as to the following documents (the numbering corresponds to the list attached to Mr. Selby's Declaration): 13, 13A, 16, 17, 18, 27, 34, 36, 39, 40, 41, 42, 43, 44, 45, 46, 57, 65, 69, 71, and 72," and that "it hereby asserts the attor-

ney/client privilege as to the following documents (the numbering corresponds to the list attached to Mr. Selby's Declaration): 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 19, 20, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33, 35, 37, 38, 48, 50, 51, 52, 58, and 59."

**18.** In the case of documents that the Court found are protected by the attorney-client privilege, which is not qualified, the defendants' interests were not considered or weighed.

**19.** The appendix has been omitted from the published opinion.

**20.** In some instances, where it proved to be impossible from the documents themselves and from the Comptroller's meager submissions to conclude that a privilege existed, the Court denied the particular privilege claim.