David WALSH, on behalf of himself and all others similarly situated, Plaintiff,

v.

CHITTENDEN CORPORATION, William H. Bruett, Jr. and Richard M. Chapman, Defendants.

No. 2:91–CV–208.

United States District Court, D. Vermont.

Sept. 1, 1992.

L. Randolph Amis, III, Wiener & Amis, Burlington, Vt. and Dennis J. Johnson, Susan Schneider Thomas, Zlotnick & Thomas, Bala Cynwyd, Pa., for plaintiff.

Michael B. Clapp, Dinse, Erdmann & Clapp, Burlington, Vt. and I. Scott Bieler, Roger Hawke, Brown & Wood, New York City, for defendants.

Jacqueline A. Hughes, General Counsel, State of Vt., Montpelier, Vt., for Dept. of Banking, Ins. and Securities.

## OPINION AND ORDER

PARKER, Chief Judge.

The Vermont Department of Banking, Insurance and Securities seeks an order quashing a subpoena dated February 25, 1992, served upon the Department by plaintiff in this securities fraud litigation[1] on the ground that the subpoena requests documents that are privileged under federal law. The subpoena requests various documents in the Department's possession relating to defendant Chittenden Corporation during the period from June 1, 1988 to December 31, 1990, including examination and/or investigation reports and responses; correspondence concerning "the quality, adequacy or condition of Chittenden's loan portfolios, capital, liquidity, dividend policies, assets, securities, credit practices and/or policies, management remuneration, collection practices and/or policies, loan collateral, appraisals, loan documentation, loan loss reserves or allowances and/or charge offs"; documents relating to "unsafe and unsound banking practices" at Chittenden; documents relating to Chittenden's assets classified as "loss," "doubtful" or "substandard"; all minutes and other records of Chittenden's Board of Directors or any committee thereof; all memoranda and other papers relating to Chittenden's provisions for loan losses and the bank's financial condition; and documents relating to loans by Chittenden to Marble Island and Mt. Ascutney.

The Department argues that the subpoenaed documents are protected from disclosure both by federal statutes and regulations and by a "qualified deliberative process privilege" recognized in federal decisional law. For the reasons stated below, the Department's motion is denied.

## I. STATUTORY LAW AS GROUNDS FOR PRIVILEGE

 In its initial motion to quash, the Department relied upon two federal statutes, 18 U.S.C. §§ 1905 and 1906. (A subsequent memorandum in support of the motion appears to abandon the statutory argument.) Neither statute is applicable in the present circumstances. 18 U.S.C. § 1905 prohibits only disclosures by federal officers and employees; the Department is an arm of the State of Vermont, not the federal government. 18 U.S.C. § 1906 prohibits the disclosure of certain information by any bank examiner "with access to bank examination report information" provided by the Comptroller General. However, the statute expressly permits bank examiners to disclose such information "when ordered to do so by a court of competent jurisdiction." That condition obtains here.

## II. FEDERAL REGULATIONS AS GROUNDS FOR PRIVILEGE

 The Department next claims that production of the documents—at least those that report bank examinations conducted jointly by the state and the Federal Deposit Insurance Corporation (FDIC)—is prohibited by regulations governing the FDIC, 12 C.F.R. § 309 *et seq.* Section 309.5, which generally authorizes the disclosure of information by the FDIC upon request, also provides in paragraph (c), entitled "Exempt information," that "[a] request for records may be denied if the requested record contains information which falls into one or more of the following categories[:].... (8) Records contained in or related to examination, operating, or condition reports by or on behalf of, or for

---

**1.** The claims and factual background of the litigation are set forth in this court's opinion denying defendants' motions to dismiss and for summary judgment and granting plaintiff's motion to certify class. *Walsh v. Chittenden Corp.*, 798 F.Supp. 1043 (D.Vt.1992).

the use of, the FDIC or any agency responsible for the regulation or supervision of financial institutions." Section 309.6 authorizes the disclosure of "exempt" records by FDIC personnel in certain situations in accordance with certain specified procedures. The regulations are apparently intended to govern disclosures of FDIC examination reports even by state agencies. See § 309.6(c)(7)(ii) ("The Director of the [FDIC's] Division of Supervision may authorize any third party, including Federal or State agencies, that has received a copy of a [FDIC] report of examination or other exempt record to disclose such report or exempt record to another party or agency.").

The regulatory scheme, however, expressly does not purport to restrict disclosure in response to a subpoena:

> Classification of a record as exempt from disclosure under the provisions of § 309.-5(c) shall not be construed as authority to ' withhold the record if it is otherwise subject to disclosure under ... any directive *or order of any court* of competent jurisdiction.

12 C.F.R. § 309.5(c) n. 4 (emphasis added).[2] Thus, if the requested records are "otherwise subject to disclosure" by a subpoena issued by this court, the FDIC regulations "shall not be construed as authority to withhold the record[s]."

■ In rather inconsistent fashion, § 309.7, which deals with legal process to obtain information maintained by the FDIC, contains the following paragraph:

> (c) Absent the authorization of the [FDIC's] General Counsel (or anyone designated by him in writing) to disclose the requested information, any officer, employee, or agent of the [FDIC] (and any

person having custody of exempt records of the [FDIC] who is not an officer, employee, or agent of the [FDIC]), who is required to respond to a subpoena, court order, or other legal process, shall attend at the time and place therein specified and respectfully decline to produce any such record or give any testimony with respect thereto, basing such refusal on this section.

The Department did not attend at the time and place specified in the subpoena to respectfully (or in any other manner) decline to produce the subpoenaed records; instead, it filed the instant motion to quash four days after the date specified for appearance in the subpoena. In any event, § 309.7(c) notwithstanding, § 309.5(c) provides that classification of records as exempt does not justify the Department in withholding records otherwise subject to disclosure by court order.

## III. DELIBERATIVE PROCESS PRIVILEGE

■ Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The Department argues that the documents requested in the subpoena are protected from disclosure to the plaintiff by the deliberative process privilege.[3] It is of course the Department's burden to establish the existence and applicability of the privilege. *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C.Cir.1984).

Judge Weinstein discussed the privilege at length in *In re Franklin Nat'l Bank*

---

2. Conversely, the mere fact that a record may be subject to disclosure under court order does not *ipso facto* release persons from the regulatory restrictions on disclosure of exempt records. § 309.6(a) (provisions governing disclosure of exempt records apply "regardless of the fact that such records may be subject to disclosure under ... any directive or order of any court of competent jurisdiction.").

3. Case law and commentary variously refer to the "deliberative process" privilege, the "official

information" privilege, the "intragovernmental opinion" privilege, and the "executive" privilege. Nomenclature aside, these privileges all are designed to protect from public disclosure the opinions, recommendations and deliberations of government officials, where disclosure might impair, in one or another fashion, the effective functioning of the executive branch. See *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975).

**408**

*Securities Lit.,* 478 F.Supp. 577 (E.D.N.Y. 1979), as follows:

The primary rationale for the intragovernmental opinion privilege is that effective and efficient governmental decision making requires a free flow of ideas among government officials and that inhibitions will result if officials know that their communications may be revealed to outsiders....

The assumption is that "government, no less than the citizen, needs open but protected channels for the kind of plain talk that is essential to the quality of its functioning." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 325 (D.D.C.1966), *aff'd. on opinion below,* 384 F.2d 979, *cert. denied,* 389 U.S. 952 [88 S.Ct. 334, 19 L.Ed.2d 361] (1967)....

A subsidiary theory supporting the official information privilege relies upon a related, though still distinct principle: "The judiciary ... is not authorized 'to probe the mental processes' of an executive or administrative officer." *Id.* ...

Implicit in the two theories upon which the official information privilege rests is an important limitation upon its scope. The privilege protects only expressions of opinion or recommendations in intragovernmental documents; it does not protect purely factual material....

Even when the government asserts the official information privilege with respect to opinions or recommendations, nondisclosure is not guaranteed. The official information privilege is a qualified privilege; it is not absolute.... Strong competing interests must be weighed against the government's interest in nondisclosure. Foremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding.

*Id.* at 580–81 (citation form modified; citations omitted). See *Seafirst Corp. v. Jenkins,* 644 F.Supp. 1160, 1163–64 (W.D.Wash.1986) (deliberative process privilege protects only "documents that anticipate and address the possible adoption of some decision or policy"; Comptroller's confidential bank examination reports "simply are not formulated to serve this

function" and are therefore not protected by the privilege); *Delozier v. First Nat'l Bank of Gatlinburg,* 113 F.R.D. 522, 525 (E.D.Tenn.1986).

■■■ The privilege " 'must be formally asserted and delineated in order to be raised properly.' " *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d at 1342 (quoting *Kerr v. United States Dist. Ct. for North. Dist. of Cal.,* 511 F.2d 192, 198 (9th Cir.1975)). The agency asserting the deliberative process privilege "must demonstrate precise and certain reasons for preserving the confidentiality of the governmental communication." *Lundy v. Interfirst Corp.,* 105 F.R.D. 499, 504 (D.D.C.1985). "[B]ecause these privileges obstruct the search for truth and because their benefits are indirect and speculative, they must be strictly construed." *Id.*

■■ In this case there are serious weaknesses to the Department's assertion of the deliberative process or intragovernmental opinion privilege. Questions abound as to whether the Department has properly complied with the procedural prerequisites for moving to quash (its motion was filed four days after its appearance was demanded by the subpoena); whether it has asserted and delineated the privilege with adequate clarity and specificity (it failed to designate which documents or portions of documents it claims are covered by the privilege); and whether the Department's bank examination reports could *ever* be covered by the deliberative process privilege (under the test stated in *Seafirst,* they would not be privileged because they are not "predecisional"). Even assuming answers in the Department's favor to all these queries, the court concludes that the privilege does not apply in this case as it does not survive the balancing test outlined in *Franklin National Bank.*

It is undisputed that the materials requested in the subpoena are relevant to the allegations in plaintiff's complaint. In particular, to prove its claim that defendants engaged in securities fraud, plaintiff must show that they acted with scienter. *Ouaknine v. MacFarlane,* 897 F.2d 75, 81 (2d

Cir.1990). Information contained in the Department's records of Chittenden Corporation, probably unavailable elsewhere, may support the allegation of scienter. Plaintiff's interest in obtaining the Department's records is undoubtedly strong.

The Department's interest in nondisclosure is set forth in an affidavit of William H. Rockford, Jr., the Deputy Commissioner for Banking with the Vermont Department of Banking, Insurance and Securities. The affidavit states that the bank examination reports prepared by the Department and received from the FDIC contain "the impressions and opinions of the examiners on bank practices, management and relative financial position and stability." The reports also "recommend improvements to the examined bank's operations." Three separate reasons for nondisclosure are identified:

8. Public disclosure of examination reports would carry a substantial risk of misunderstanding by the public leading to an inappropriate loss of confidence in healthy, viable banks.

9. It is the policy of the Department of Banking, Insurance and Securities to treat the report as well as communications leading up to the report with the strictest confidentiality. This confidentiality encourages banks under examination to fully disclose all pertinent data for assessment of their operations.

10. There is a risk that if joint examination reports were discoverable through the Vermont Department of Banking, Insurance and Securities, the Department's current joint undertakings with the F.D.I.C. could be curtailed or restricted.

The interest identified in paragraph 8 of the affidavit—preventing the public's "inappropriate loss of confidence" in the banks—may indeed be substantial. But I do not believe that production of the subpoenaed documents in this litigation would substantially impair such an interest. The parties in the lawsuit have entered into a confidentiality agreement, endorsed by the court on April 14, 1992, stipulating that information designated as confidential by any party *or non-party* shall be used sole-

ly for purposes of the litigation and not disclosed to others, and that any confidential information filed with the court shall be under seal. Thus, the Department's records—or, more specifically, those portions which might be protected by the deliberative process privilege—will likely have no impact on the public. (I would add that if the complaint's allegations of Chittenden's intentional and repeated concealment of its bad loans are sustained at trial, any ensuing loss of confidence in the Chittenden Bank might not be "inappropriate" in the first instance.)

As to the interest identified in paragraph 9 of the Rockford affidavit, the Department presents no evidence to show that production of its records in the discovery process, subject to a confidentiality stipulation by the parties, would discourage banks' cooperation with the Department's examinations. See *Seafirst Corp.*, 644 F.Supp. at 1164 ("This argument seems to assume that bank personnel cooperate in the examination process for their own benefit.... Those who would be willing to hide information from an examiner against the spirit of the law would be no more likely to come forward if their communication with the examiner were privileged as opposed to merely confidential."); *Lundy v. Interfirst Corp.*, 105 F.R.D. at 502 (protective order "adequate to prevent the sort of public disclosure of information that would undermine confidence in the bank ... or imperil the voluntary provision of information by regulated banks"). Finally, the risk to federal and state "joint undertakings" posed by the limited disclosure in this case, alleged in paragraph 10 of the affidavit, appears to the court to be entirely speculative.

Balancing these competing interests, the court concludes that plaintiff's need for the requested materials substantially outweighs the proffered interests of the Department in nondisclosure. An in camera inspection of the records is not necessary to make this judgment. The Department simply has failed to advance the "precise and certain reasons for preserving the confidentiality of the governmental communication," *Lundy*, 105 F.R.D. at 504, neces-

sary both to overcome the plaintiff's patent need to examine the records and to dispel the court's reluctance to interfere with the truth-seeking process.

The Department's Motion to Quash Subpoena (paper # 51) is accordingly DENIED. The Department is ORDERED to comply with the February 25, 1992 subpoena within 14 days of this Order.