**SEAFIRST CORPORATION, Plaintiff,**

v.

**William JENKINS, et al., Defendants.**

**No. C83–771R.**

United States District Court,
W.D. Washington.

June 20, 1986.

See also, D.C., 644 F.Supp. 1152.

Stephen V. Bomse, Eric Redman, Robert
Rosenfeld, Matthew Larrabee, Heller, Ehr-

man, White & McAuliffe, Seattle, Wash., San Francisco, Cal., for Seafirst.

Stevan D. Phillips, Deborah A. Elvins, Jones, Grey & Bayley, Seattle, Wash., Luke D. Lynch, Jr., D'Amato & Lynch, New York City, for National Union.

Steven B. Frank, Seattle, Wash., Daniel W. Krasner, Fred T. Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Sherrie R. Savett, Berger & Montague, Philadelphia, Pa., Richard D. Greenfield, Greenfield, Chimicles, Haverford, Pa., Chris R. Youtz, Sirianni & Youtz, Seattle, Wash., for class plaintiffs.

William Lerach, San Diego, Cal., Alan Schulman, Milberg, Weiss, Bershad, Specthrie & Lerach, John Braislin, Betts, Patterson & Mines, Seattle, Wash., for Nayes.

T. Dennis George, Laurie Kohli, George Hull & Porter, Seattle, Wash., for Jaehning.

Allan H. Baris, Merrick, Hofstedt & Lindsey, Seattle, Wash., for John Nelson.

Richard E. Keefe, Foster, Pepper & Riviera, Seattle, Wash., for Curtis.

Evan L. Schwab, Davis, Wright & Jones, Seattle, Wash., for Seafirst, Carter, Anderson, Gering, A. Nelson & Gillis.

William A. Helsell, Ragan Powers, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for Jenkins.

Robert D. McLean, Sidley & Austin, Chicago, Ill., Richard M. Clinton, Lucy P. Isaki, Bogle & Gates, Seattle, Wash., for Arthur Andersen & Co.

J. Ronald Sim, Schweppe, Krug & Tausend, Seattle, Wash., for John Boyd.

J. Vernon Williams, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for McGregor, Stroum, Therpe, and Webster.

## REPORT AND RECOMMENDATION

ROTHSTEIN, District Judge.

THIS MATTER comes before the court as special master appointed by the Honorable Charles R. Richey of the United States District Court for the District of Columbia to hear a discovery matter, *Seafirst Corp. v. Jenkins*, Misc. No. 85–0346, filed in the District of Columbia. The discovery matter has been filed by John R. Boyd in order to serve certain subpoenas duces tecum on the Comptroller of the Currency. Boyd now moves to enforce these subpoenas, and Arthur Andersen & Company joins in his motion. The court has reviewed the memoranda and other materials submitted in support of and in opposition to this motion and has inspected *in camera* the documents Boyd seeks. The court concludes that the subpoenas should be enforced.

John R. Boyd seeks discovery from the Comptroller in connection with an array of lawsuits known as the Seafirst Litigation, currentl pending in the Western District of Washington. The Seafirst Litigation involves certain large losses reported by Seafirst Corporation in 1982 as a result of the nonperformance of certain energy loans undertaken by Seafirst's principal subsidiary Seattle-First National Bank and numerous energy loan participations purchased by Seattle-First National Bank from the now defunct Penn Square Bank of Oklahoma. It is comprised of two major cases. In *Seafirst Corp. v. Boyd*, Seafirst Corporation asserts mismanagement claims against a number of former officers and directors of Seafirst and Seattle-First National Bank as well as against Arthur Andersen & Company. In *Naye v. Boyd*, a class of Seafirst common stock purchasers ("class plaintiffs") assert Rule 10b–5 claims against Seafirst, Seattle-First National Bank, numerous former officers and directors of these two corporations, and Arthur Andersen. Among the defendants in each of these cases is John R. Boyd, former Senior Vice President of Seattle-First National Bank and Manager of the bank's Energy Division. The Comptroller is not a party to either of these cases.

In February, 1982, the National Bank Examiners ("NBE") of the Office of the Comptroller of the Currency ("OCC") commenced one of their regular examinations of Seattle-First National Bank. *See* 12 U.S.C. § 481 (1982). On the basis of this examination, NBE produced certain reports

that contain information about the financial condition of the bank and evaluations of bank management. The purpose of such reports is to communicate to the Comptroller the information necessary for effective supervision of national banks. The reports are strictly confidential.

One of the reports produced by NBE on the basis of their examination of Seattle-First National Bank is the 1982 Commercial Report of Examination. It appears that a draft of the Commercial Report may have been reviewed by senior officers of Seattle-First National Bank. Declaration of J. Ronald Sim in support of Boyd's Motion to Enforce Subpoenae served on Comptroller of Currency ("Dec. Sim"), Ex. K at 481–84, Ex. L at 583–85. This draft report was generally favorable with minor reservations. After the closure of Penn Square Bank on July 5, 1982, the draft report was substantially rewritten based on new information and additional examination. The final 1982 Commercial Report of Examination was highly critical of Seattle-First National Bank's Energy Division.

In July, 1982, OCC issued to Seattle-First National Bank a Shared National Credit Examination Report. A shared national credit is a loan or loan commitment of $20 million or more that is shared by two or more banks. The report contains information on problem credits shared by Seattle-First National Bank.

On January 17, 1983, class plaintiffs submitted to the Comptroller a request under 12 C.F.R. § 4.19 for release of portions of the 1980–82 NBE reports on Seattle-First National Bank. Dec. Sim, Ex. D. On January 20, 1984, the Comptroller agreed to release certain redacted versions of the reports. *Id.* According to the Comptroller, portions deleted consist largely of statements of opinion. *Id.*

On January 25, 1984, Seafirst submitted to the Comptroller a request under 12 C.F.R. § 4.19 for release of the draft of the 1982 Commercial Report of Examination on Seattle-First National Bank. Dec. Sim, Ex. E. Boyd joined in this request. *Id.*, Ex. F.

By letter dated April 12, 1984, the Comptroller denied the request. *Id.*, Ex. G.

On October 2, 1985, Boyd served a subpoena duces tecum on the Comptroller that requires production of the 1982 Commercial Report of Examination on Seattle-First National Bank and the draft thereof. Dec. Sim, Ex. H. On October 9, 1985, Boyd served a second subpoena duces tecum on the Comptroller that requires production of the 1982 Shared National Credit Examination Report issued to Seattle-First National Bank. *Id.*, Ex. I.

The Comptroller has objected to these subpoenas on the grounds that (1) the material Boyd seeks is protected by the deliberative process privilege; (2) the material is confidential and the Comptroller's interest in confidentiality outweighs the litigants' need for protection; (3) the subpoenas are overbroad; and (4) the subpoenas were not accompanied by proof of service of a notice to take a deposition. In addition, the Comptroller objected to the second subpoena on the grounds that the litigants have failed to exhaust administrative remedies.

The court believes that the subpoenaed NBE reports are extremely relevant to the defenses raised by Boyd and Arthur Andersen to the claims against them in the Seafirst litigation. Seafirst has alleged that under Boyd's management, particularly during the period from November 1, 1981, to March 31, 1982, Seattle-First National Bank's Energy Division imprudently loaned many millions of dollars to high-risk energy businesses and has alleged further that Arthur Andersen, as independent auditor, negligently failed to discern the deterioration of the bank's energy portfolio. Class plaintiffs have alleged that Boyd and Arthur Andersen are both responsible for misrepresentations about the bank's energy portfolio that were published in Seafirst's annual and quarterly reports to shareholders in 1981 and early 1982. Pursuant to these allegations, one of the key issues in the litigation is how a reasonable person would have assessed the condition of the bank's energy portfolio in early

1982. The 1982 NBE reports Boyd seeks provide an analysis of the Energy Division and parts of the energy portfolio during this time. Moreover, the draft report of examination provides analysis that has not been revised in light of the subsequent failure of Penn Square Bank.

## I. PRIVILEGE

 The Comptroller asserts that the NBE reports Boyd seeks are protected by the government's deliberative process privilege. This privilege protects "intragovernmental documents reflecting advisory opinions, recommendations and deliberations comprising part of the process by which government decisions are formulated." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.D.C.1966), *aff'd on opinion below,* 384 F.2d 979, *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

> The primary rationale for the intragovernmental privilege is that effective and efficient government decision making requires a free flow of ideas among government officials and that inhibitions will result if officials know that their communications may be revealed to outsiders.

*In re Franklin Nat'l Bank Securities Litigation,* 478 F.Supp. 577, 580–81 (E.D.N.Y. 1979). In accordance with this rationale, the privilege protects only expressions of opinion or recommendations, not purely factual material. *Id.* at 581. *See Paisley v. Central Intelligence Agency,* 712 F.2d 686, 699 (D.C.Cir.1983) (FOIA). Communications are not within the purview of the privilege unless they are both (1) "predecisional" in that they have been generated prior to an agency's adoption of a policy or decision and (2) "deliberative" in that they reflect the give-and-take of a deliberative decision-making process. *Federal Trade Comm'n v. Warner Communications, Inc.,* 742 F.2d 1156, 1158, 1161 (9th Cir. 1984). *See Kansas State Network, Inc. v. Federal Communications Comm'n,* 720 F.2d 185, 191 (D.C.Cir.1983) (predecisional document stricken from record on appeal).

In the *Franklin Nat'l Bank* case, Judge Weinstein concluded that NBE bank examination reports are largely factual and therefore are not the sort of document to which the deliberative process privilege applies. 478 F.Supp. at 583–85. Upon review of the reports Boyd seeks in the present discovery matter, this court agrees. These reports serve to present and interpret facts, not to offer recommendations of policy or even to outline proper courses of action with respect to particular banks.

The Comptroller argues that the factual material in the NBE reports in question is inextricably intertwined with expressions of opinion and professional judgment. He further argues that these expressions of opinion and professional judgment are "predecisional" and "deliberative" and thus satisfy the requisites of the deliberative process privilege. The court rejects this argument for two reasons:

First, the statements characterized by the Comptroller as opinion or professional judgment are essentially expert interpretations of facts. In other words, a bank examiner may summarize a multitude of observations in a few concise words. Such words are ultimately factual, subject to evaluation only by their degree of accuracy. The objective of accuracy is unaffected by the prospect of future disclosure, no matter how much expertise is brought to bear. Therefore, reliance on expertise does not transform interpretations of facts into communications protected by the deliberative process privilege. *See Franklin Nat'l Bank,* 478 F.Supp. at 583–85. *See also Parke-Davis & Company v. Califano,* 623 F.2d 1, 6 (6th Cir.1980) (under FOIA, opinions of medically and scientifically trained persons not protected unless part of deliberative process); *Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore,* 508 F.2d 945, 948–49 (4th Cir.1974) (under FOIA, conclusion of investigator as to cause of accident not protected).

Second, nothing in the NBE reports is "predecisional" and "deliberative" for purposes of the deliberative process privilege. These terms contemplate documents that

anticipate and address the possible adoption of some decision or policy. The NBE reports simply are not formulated to serve this function. The Comptroller's argument to the contrary dilutes the terms "predecisional" and "deliberative" to the point that the deliberative process privilege would cover virtually all intragovernmental communications. The Comptroller asserts that the NBE reports are "predecisional" because they may ultimately provide the factual basis for subsequent regulatory decisions. Yet all information generated by a regulatory agency is presumably useful, at least potentially, in some decision-making process. The Comptroller argues that the draft is "predecisional" for the added reason that the draft preceded a final report. However, a final report of examination is not a decision. It does not announce any action or policy on the part of the Comptroller. Finally, the Comptroller argues that the reports are "deliberative" because the documents themselves have been discussed and revised by OCC staff. In other words, the Comptroller claims that there has been deliberation in the preparation of the documents. As a report of examination does not in itself constitute a decision, however, deliberation in the preparation of such a report is irrelevant.

As the court concludes that the NBE reports are not protected by the deliberative process privilege, the court has no occasion to weigh the litigants' need for discovery against the Comptroller's interest in nondisclosure. The court expresses no opinion as to whether the reports may be admissible at trial.

## II. CONFIDENTIALITY

■ The Comptroller asserts that because NBE reports are confidential they are not subject to discovery. Under Fed.R. Civ.P. 26, however, confidentiality is not a bar to discovery. A protective order that restricts use of confidential discovery materials and requires such materials to be filed under seal can provide adequate protection for confidentiality. A protective order of

this kind has been entered in the Seafirst Litigation.

In essence, the Comptroller's confidentiality argument is an invitation to create an entirely new privilege for the singular protection of NBE reports. As the law generally disfavors restrictions on judicial inquiry, creation of a new privilege would have to be supported by compelling justification. The court believes that the new privilege the Comptroller suggests should be rejected in the present matter because such justification is lacking.

The Comptroller argues that confidentiality protects the stability of the banking system, the integrity of the bank examination process, and the privacy of bank customers. In the present matter, however, none of these interests requires extraordinary protection.

First, stability of the banking system is not threatened by the prospect of disclosure. In light of the publicity already received by Seattle-First National Bank's difficulties, the court is quite confident that the NBE reports Boyd seeks contain no information that could start a run on the bank at this late date. Even if these reports did contain startling new information, such information would receive adequate protection under the protective order.

Second, the integrity of the bank examination process will not suffer. The Comptroller argues that disclosure may have a chilling effect on the candor of bank personnel. This argument seems to assume that bank personnel cooperate in the examination process for their own benefit. As the court understands 12 U.S.C. § 481, however, their cooperation is required by law. Therefore, a privilege would be superfluous. Those who would be willing to hide information from an examiner against the spirit of the law would be no more likely to come forward if their communication with the examiner were privileged as opposed to merely confidential.

Third, disclosure will not increase the impact of the Seafirst Litigation on the privacy of bank customers. The subject matter of this litigation relates to the quali-

ty of Seattle-First National Bank's energy portfolio and the nature of the borrowers to whom Boyd and others loaned money. Accordingly, the parties have already undertaken extensive inquiry into particular transactions with particular borrowers now delinquent or defunct. Insofar as the NBE reports may reveal new information about these borrowers, the protective order adequately restricts the possible use of such information.

## III. OVERBREADTH

The Comptroller asserts that the subpoenas are overbroad in that much of the information contained in the NBE reports is irrelevant to the Seafirst Litigation. However, the Comptroller does not indicate which sections of the reports he considers irrelevant.

■ The court believes that disclosure of some possibly irrelevant material will cause no harm. In contrast, partial disclosure may tend to distort the tenor of the reports. *See Franklin Nat'l Bank*, 478 F.Supp. at 585. The court observes that the redacted versions of NBE reports the Comptroller supplied to class plaintiffs two years ago are incoherent and virtually useless.

The court concludes that the best course of action is to require production of whole reports. This approach eliminates any burden on OCC to separate relevant and irrelevant portions of the reports. It also protects the litigants from possible nondisclosure of information they might consider significant.

## IV. PROOF OF SERVICE

■ The Comptroller no longer presses the argument that Boyd's service of the subpoenas duces tecum on the Comptroller was insufficient in that the subpoenas were not accompanied by proof of service. In any event, the argument is frivolous because the proof of service required by Fed. R.Civ.P. 45(d)(1) is for purposes of the record, not for the benefit of the person served.

## V. EXHAUSTION

■ The Comptroller points out that neither Boyd nor anyone else connected with the Seafirst Litigation has ever requested the 1982 Shared National Credit Examination Report pursuant to 12 C.F.R. § 4.19. However, the court is aware of no authority to the effect that exhaustion of this request procedure is a jurisdictional requirement. As the Comptroller has expressly claimed that the 1982 Shared National Credit Examination Report is privileged, resort to the request procedure would be entirely fruitless. Under such circumstances, exhaustion of the administrative process is not necessary.

## VI. CONCLUSION

The court concludes that the subpoenaed documents are not privileged and are otherwise subject to discovery. Accordingly, the court, as special master, recommends that Boyd's motion to enforce subpoenas duces tecum should be granted.

The Clerk of the Court is directed to forward copies of this report and recommendation to counsel of record, including counsel for the Comptroller of the Currency, and to Judge Richey and the United States District Court for the District of Columbia for the record of *Seafirst v. Jenkins*, Misc. No. 85–0346.