**Billy E. DELOZIER, et al., Plaintiffs,**

**v.**

**FIRST NATIONAL BANK OF GATLINBURG, et al., Defendants.**

**Civ. No. 3–85–674.**

United States District Court, E.D. Tennessee, N.D.

Nov. 10, 1986.

W. Joe Mize, Scott J. Pias, Camp, Carmouche, Barsh, Hunter, Gray, Hoffman &

Gill, Lake Charles, La., Jerry K. Galyon, Galyon & Stokes, Sevierville, Tenn., for plaintiffs.

Charles D. Susano, Jr., Bernstein, Susano, Stair & Cohen, Knoxville, Tenn., for Darrell Huffaker.

W.W. Davis, Jr., Donald F. Paine, Knoxville, Tenn., for First Nat. Bank of Gatlinburg.

W.W. Davis, Jr., Donald F. Paine, Knoxville, Tenn., for Tom McNerney, Muncy Houser, B.E. Maples, Bill McGill, Charles Earl Ogle, Sr., Bruce Whaley, Dick Whaley, Wallace Zoder.

Nancy Palmer, Asst. U.S. Atty., Knoxville, Tenn., for Comptroller.

## MEMORANDUM AND ORDER

ROBERT P. MURRIAN, United States Magistrate.

This matter was referred to the undersigned United States Magistrate pursuant to an Order of Reference, 28 U.S.C. § 636(b) for disposition of the plaintiffs' motion for protective order [Doc. 72] and motion for protective order filed by the United States of America [Doc. 81]. By Memorandum filed June 9, 1986 [Doc. 105], the undersigned requested that the parties brief this matter in terms of the law of qualified privilege for official information. The parties have done so.

As noted in the June 9, 1986, Memorandum, this is an action filed under the Racketeer Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. § 1961, *et seq.* The plaintiffs contend that the defendants devised a scheme to defraud them out of their security interest in funds attributable to the sale of certain timeshare units. The complaint alleges that the defendants fraudulently induced plaintiffs to release their security interest in the Timeshare Development property in order to deprive plaintiffs of the proceeds from the sales of timeshare paper to Berkley Federal Savings.

Factually, plaintiffs contend that they were originally owners of a condominium project that was converted to a timeshare project and sold for $1.5 Million Dollars to National Timeshare. A deed of trust security interest in that timeshare project was assigned to First National Bank of Gatlinburg to secure an outstanding $310,-000 obligation owed to First National Bank of Gatlinburg by the plaintiffs. The timeshare units to the condominium project were sold and that paper discounted for approximately $1.7 Million Dollars to Berkley Federal Savings. The plaintiffs contend that the bulk of this money flowed to First National Bank of Gatlinburg and should have been applied to the plaintiffs' indebtedness to the First National Bank of Gatlinburg. They claim that they were fraudulently induced by defendants to release their security interest in the property and that the public records of Sevier County· contain numerous Partial Releases by First National Bank of Gatlinburg acknowledging payment to First National Bank of Gatlinburg of money in return for a partial release of the underlying security of this Deed of Trust. The plaintiffs also contend that fraudulently prepared reports were filed with the Comptroller of the Currency [OCC] as part of the scheme to defraud the plaintiffs and to conceal the fraud from discovery. A more complete statement of the claims being made here is found in the Court's Memorandum filed October 10, 1985 [Doc. 24]. *See also Delozier v. First Nat. Bank of Gatlinburg,* 109 F.R.D. 161 (E.D.Tenn.1986).

In the course of discovery plaintiffs' counsel came into possession of the Comptroller of the Currency's report of examination of First National Bank of Gatlinburg dated April 30, 1984. The Comptroller contends that the report is privileged and confidential. The plaintiffs contend that the information in the Report of Examination is relevant to many issues in this litigation. The Comptroller has filed under seal a redacted version of the Report of April 30, 1984 [Doc. 128]. This corresponds with the outline of information he considers to be relevant to the instant litigation as set out in his memorandum submitted in response to the undersigned's June 9, 1986, directive.

■ Because this extract does not contain all of the information outlined by the plaintiffs as being relevant to their case, the undersigned must first evaluate the plaintiffs' claim of relevancy, Rule 26(b)(1), Fed.R.Civ.P., since the information sought must *initially* satisfy the relevancy requirement of Rule 26(b), Fed.R.Civ.P., before there is any necessity to determine the appropriateness of the government's claim of privilege. *See Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C.Cir.1968) ("matters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevancy ..."). The proper method for making this determination is through an *in camera* inspection of the report. *See United States v. Provident National Bank*, 41 F.R.D. 209 (E.D. Pa.1966). *See also*, J. Weinstein and M. Berger, *Weinstein's Evidence*, § 509[07] at 509–50–51 (1985). If the evidence is relevant, the undersigned must then assess the Comptroller's claim of privilege regarding this requested information, balancing the government's interest in nondisclosure against the interest of the litigants and the public in disclosure. *See, e.g., Jabara v. Kelley*, 75 F.R.D. 475 (E.D.Mich.1977); *United States v. Article of Drug Consisting of 30 Individually Cartoned Jars More or Less*, 43 F.R.D. 181, 190 (D.Del. 1967).

The undersigned notes that the primary discrepancy between what the plaintiffs claim to be relevant and the extract which the Comptroller has filed under seal concerns information dealing with the overall condition and supervision of the bank, information which plaintiffs have characterized as demonstrating a lack of internal controls within the bank. It is the Comptroller's position that only information dealing with the named plaintiffs and named defendants and National Timeshare Marketing Consultants is relevant. This category of information requested by the plaintiffs and not submitted under seal in the redacted version by the Comptroller is found on pages 1–2, 18–20, 22, 29, Appendix A29–A30, and A76–A81. These portions will be examined *seriatim* in light of the legal standard of relevancy.

■ The undersigned is constrained to disagree with the Comptroller's position that information regarding the management practices at the defendant bank is not relevant to the alleged RICO conspiracy. Information concerning the defendants' motive(s) and opportunity for committing the alleged wrongful acts would certainly be relevant on the issue of defendants' "scienter." *See Denny v. Carey*, 78 F.R.D. 370, 374 (E.D.Pa.1978).

■ One of the predicate acts alleged in the complaint is mail fraud, 18 U.S.C. § 1341. The burden is upon plaintiffs to prove predicate acts like mail fraud. *See Sedima, SPRL v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 S.Ct. 3275 (1985). The crime of mail fraud has two elements: (1) a scheme or artifice to defraud, and (2) a mailing for the purpose of executing the scheme. *Bender v. Southland Corp.*, 749 F.2d 1205, 1215–1216 (6th Cir.1984). A scheme or artifice to defraud must involve intentional fraud practiced with intent to deceive or defraud. *Id.* Fraud is often difficult to prove because those who engage in it often "cover their tracks" well. Many times fraud has to be proved by circumstantial evidence. If there is evidence in the ROE that the bank's practices and procedures were such that there was a climate conducive to encouraging, acquiescing in or being oblivious to fraud which certain persons may have been engaged in, then I believe that such evidence meets the threshold relevancy requirements of Rule 26(b)(1), Fed.R.Civ.P. Also, if there is evidence that the bank was in poor shape financially, it would be probative of defendant's motives in carrying out any scheme to defraud.

The following items requested by plaintiff meet the threshold relevancy requirements of Rule 26(b)(1): (1) all materials supplied by the Comptroller of the Currency in redacted form [Doc. 128], (2) the second paragraph of the letter dated July 11, 1984, and signed by Mr. Frawley, (3)

pages 18–20 of the ROE, (4) page 29, first, third and last paragraphs, (5) pages A29–A30, and (6) pages A76–A81.

 The undersigned must now determine the applicability of the official information privilege, both as to the redacted version submitted by Comptroller and as to the other relevant information requested by the plaintiffs. The qualified privilege for official information serves to protect matters, the disclosure of which would be " 'injurious to the consultative functions of government....' " *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). It shields from disclosure those documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carl Zeiss, Stiftung v. V.E.B. Carl Zies, Jena,* 40 F.R.D. 318, 324 (D.D.C.1966), *aff'd* 384 F.2d 979, *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967), *quoted in NLRB v. Sears,* 421 U.S. at 150, 95 S.Ct. at 1507. To be protected the material must comprise part of the "deliberative process." *Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C.Cir.1975). Accordingly, purely factual material falls outside the scope of the privilege. *See Environmental Protection Agency v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973);[1] *In Re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 581–82 (E.D.N.Y.1979) and cases there cited. The rationale for this fact-opinion dichotomy rests on the basis that the disclosure of facts neither hinders the free flow of advice in government decision making nor involves improper judicial interference with that process. It is only the protection of opinions, recommendations and analyses which furthers these

goals. *Id., see also Farrell v. Piedmont Aviation, Inc.,* 50 F.R.D. 385, 386 (W.D.N. C.1969) (factual information in evaluation reports by Federal Aviation Administration would have to be produced).

 The Comptroller argues that disclosure of the entire ROE at issue in this matter is inappropriate. The undersigned agrees. The report contains opinions and judgments of agency officials which are part of the deliberative process. However, careful *in camera* inspection by the undersigned of the redacted version filed by the Comptroller demonstrates that this extract contains only factual statements regarding the various parties to this litigation. Accordingly, this material falls outside the scope of matters protected by the qualified privilege for official information. The oft noted "illusory quality of ... a fact-opinion distinction," 11 Moore, *Federal Practice* § 701.02 (1976), is not present here. Accordingly, the undersigned is of the opinion that the Extract of the April 30, 1984, ROE heretofore filed under seal by the Comptroller, should be provided to plaintiffs' counsel as soon as an appropriate protective order is filed which will limit the use of such materials to this litigation.

### Applicability of the Privilege to Portions of the ROE Not Contained in the Comptroller's Extract

The information contained in the second paragraph of the July 11, 1984, letter is a summary of the OCC's findings and is not information which is part of any deliberative process.

The information contained on pages 18–20 and page 29 deal with the bank's loan portfolio and the degree of adherence by bank officials to proper policies and proce-

---

**1.** Although the *Sears, Mink,* and *Vaughn* cases construed Exemption 5 of FOIA which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5) (1976), they are nevertheless applicable here. Exemption 5 exempts only those documents normally privileged in the civil discovery context. *NLRB v. Sears, Roebuck & Co.,*

421 U.S. at 148–49, 95 S.Ct. at 1515; *EPA v. Mink,* 410 U.S. at 85–86, 93 S.Ct. at 835; *Vaughn v. Rosen,* 523 F.2d at 1143. "Thus in effect Exemption 5 is coextensive with the common law discovery privileges since Exemption 5 shields from a member of the public seeking a document under FOIA that which would be shielded from a litigant seeking discovery from an agency." *McClelland v. Andrus,* 606 F.2d 1278, 1287 n. 54 (D.C.Cir.1979).

dures. These pages contain analyses by the examiner of the bank's management of loans. Pages A29–A30 deal with Mr. Huffaker's personal financial dealings. Pages A76–A81 detail the internal control deficiencies noted by OCC.

Here two interests weigh in favor of nondisclosure. One is the chilling effect on the relationship between bank examiners and bank officials. Where the possibility of future disclosure could inhibit candid discussions by bank officials of their banks' financial condition, the bank examiner's ability to detect potential problems would be impaired. *In re Franklin National Bank Securities Litigation,* 478 F.Supp. at 586; *United States v. Provident National Bank,* 41 F.R.D. at 209, 210 (E.D.Pa.1966).

The second interest in nondisclosure which must be considered is the effect of such disclosure on the public's confidence in the bank. First National Bank of Gatlinburg is not a closed bank. Where disclosure of confidential portions of a bank report might breed public misunderstanding and unduly undermine confidence in the bank, the interest in nondisclosure is strong. Against these interests the undersigned must weigh the interests of the litigants and society in accurate judicial factfinding and due process. *Bank of Dearborn v. Saxon,* 244 F.Supp. 394, 401–03 (E.D.Mich.1965), *aff'd* 377 F.2d 496 (6th Cir.1967) ("the real public interest under such circumstances is not the agency's interest in its administration but the citizen's interest in due process"). The economic impact of fraud each year may be as high as 100 billion dollars. Testimony of William H. Webster, Hearings on Dept. of State, etc., Subcommittee on Appropriations, House of Representatives, 96th Cong.2d Sess. at 17 (1980). Thus, the public interest is served by allowing access to all non-privileged, discoverable information in civil RICO litigation.

In balancing these competing interests, the Court must look at factors such as the relevancy (discussed above) of the information, its availability from other sources, as well as the seriousness of the litigation and the chilling effect disclosure might have on the government process and deliberations. *In Re Franklin National Bank,* 478 F.Supp. at 583. According to the pleadings filed, the plaintiffs' potential liability is about $14 Million Dollars. The undersigned considers this litigation to be "serious." Contrary to the Comptroller's assertion, the undersigned is of the opinion that the plaintiffs have demonstrated the relevancy of information contained in other requested portions of the ROE and the fact that it is not elsewhere available, and thus do have a weighty interest in disclosure of this material. The Comptroller's reliance on *United States v. Provident National Bank, supra,* is misplaced. As noted elsewhere, *see Denny v. Carey,* 78 F.R.D. at 374, the Court in *Provident National Bank* held that the privilege exempted from disclosure *only* the confidential reports sent to the Comptroller by the examiners. The report which the bank received, analogous to the report here under consideration, was ordered produced by the Court following protective measures. 41 F.R.D. at 209.

After balancing the competing interests, the undersigned is of the opinion that the Comptroller of the Currency should be ordered to disclose the following portions of the ROE (after an appropriate protective order is filed): (1) all materials supplied by OCC in redacted form [Doc. 128], (2) the second paragraph of the letter dated July 11, 1984, and signed by Mr. Frawley, (3) pages 18–20, (4) page 29, first, third and last paragraphs, (5) pages A29–A30 insofar as they deal with Mr. Huffaker's personal financial situation, (6) pages A76–A81.

The documents heretofore filed under seal are hereby returned to the Clerk for safekeeping [Docs. 74, 128], and they shall be held under seal pending further order of any magistrate or judge of this Court or any Court to which this case may be appealed.

Counsel for the parties and for the Comptroller of the Currency shall attempt in good faith to agree upon a suitable protective order to be filed in this case within twenty (20) days of entry hereof. If an agreement is reached on such an order, it shall be tendered to the Court for consideration. Failing agreement within the 20 days specified, the respective parties and the Comptroller of the Currency shall submit their versions of a protective order and the Court will decide the matter. Within ten (10) days after the filing of such a protective order, the plaintiffs shall return to the Comptroller of the Currency all copies of ROE's or parts thereof in plaintiffs' possession, custody or control, and the Comptroller of the Currency shall produce for inspection and copying by the plaintiffs the following: (1) all materials supplied by OCC in redacted form [Doc. 128], (2) the second paragraph of the letter dated July 11, 1984, and signed by Mr. Frawley, (3) pages 18–20, (4) page 29, first, third and last paragraphs, (5) pages A29–A30 insofar as they deal with Mr. Huffaker's personal financial situation, (6) pages A76–A81. It should be emphasized that the undersigned is not authorizing the public disclosure of these documents. They will be produced subject to an appropriate protective order which will be filed. Furthermore, it is important to remember that the information which OCC is ordered to disclose is not that supplied to it by its examiners but rather OCC's findings which were disclosed to the board of directors of the bank. Thus, this discovery does not inject itself into the internal, deliberative, decision-making processes of government. *See generally, In Re Franklin Nat. Bank Securities Litigation,* 478 F.Supp. at 581–88.

The undersigned makes no judgment regarding the admissibility into evidence of any of the matters discussed herein. Discoverability and not admissibility is dealt with here.

IT IS SO ORDERED.[2]

2. Any objections hereto must be made pursuant to Rule 72(a), Federal Rules of Civil Procedure.