Steven EDELKIND

v.

Sue Ellen ALDERMAN.

Civ. No. 1:89–cv–1419–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 16, 1989.

Hirsch Friedman, Atlanta, Ga., for plaintiff.

James Christopher Bussart, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This is an appeal of Bankruptcy Case No. A87–02679–ADK. Both parties have submitted briefs on the issue of whether the Bankruptcy Judge erred in his judgment of March 9, 1989 which held that Plaintiff's debt to Defendant is nondischargeable.

This is the fourth court in which this debt has been disputed. This action began in the DeKalb Superior Court as a divorce proceeding, Case No. 80–7049. The judgment in the divorce proceeding required that Plaintiff and Defendant have their home appraised, and that Defendant then sell her half of the home to Plaintiff. The terms of payment were to be $6,000.00 in certified funds within thirty days of the date of the divorce agreement, with the balance to be paid within five years. Interest was to be paid yearly in the amount of 10% of the outstanding balance. After the balance was paid, Defendant was to convey her entire interest in the home to Plaintiff.

Plaintiff failed to pay the initial $6,000.00 within the required thirty days. Nevertheless, Plaintiff was able to persuade Defendant to convey her entire interest in the home to Plaintiff in exchange for the $6,000.00 that was already past due, and an unsecured, pre-signed, $7,500.00 promissory note that was payable in five years. Thus, Plaintiff succeeded in convincing Defendant to give up her sole bargaining chip—her part ownership of their house—in exchange for the unsecured debt which Plaintiff now wants discharged.

Five years after the divorce court's judgment, Plaintiff had yet to pay the $7,500.00. Thus, Defendant brought this dispute to court number two—suing Plaintiff for contempt of court on the grounds that Plaintiff had failed to follow the divorce court's order to pay the $7,500.00 within five years. During this five year period, Plaintiff remarried, and conveyed to his new wife 100% ownership of the home in which they lived. In the contempt case, Plaintiff denied the debt altogether, alleging that the $7,500.00 was paid in cash, without any receipts which would enable the payment to be verified, and that the promissory note was a forgery. The state court trying that case held otherwise, adjudged Plaintiff in contempt of court, and ordered Plaintiff to pay the $7,500.00 plus interest.

Plaintiff then brought this dispute to court number three by filing for bankruptcy, and filing an adversary proceeding in bankruptcy court seeking to discharge the $7,500.00 debt. The Bankruptcy Judge stayed proceedings until the state court contempt judgment became final, and then directed the parties to file a certified copy of the state court proceedings along with "Motion[s] for Judgment Based Upon State Court Order." The Bankruptcy Judge held that "[a]fter carefully reading the transcript of the proceedings before the Superior Court submitted by the Parties and the findings of fact and conclusions of law entered by the Superior Court, the Court finds that the other elements [of fraud] necessary to preclude this debt from discharge under § 523(a)(2)(A) have been established by clear and convincing evidence." *Memorandum of Opinion and Order*, at 5, Bankruptcy Case No. 87–02679 (March 9, 1989).

Plaintiff now appeals to this court, asserting that the Bankruptcy Judge erred in collaterally estopping Plaintiff, based on the state court contempt proceeding, from trying the issue of fraud. As bases for this alleged error, Plaintiff asserts that a determination of fraud was not essential to the state court contempt proceeding, and that the standard of proof applied in the state court proceeding was less than that required to show fraud in a bankruptcy proceeding. In addition, Plaintiff alleges that the Bankruptcy Judge erred in not reviewing the entire record of the state court proceedings.

Defendant asserts that the Bankruptcy Judge did not apply the doctrine of collat-

eral estoppel, but rather reviewed the transcript of the state court proceedings and independently came to the conclusion that there existed clear and convincing evidence of fraud on the part of the Plaintiff. Defendant also points to the record below in demonstrating that the Bankruptcy Judge reviewed the entire record of the state court proceedings before reaching a judgment.

Defendant is correct in stating that the Bankruptcy Judge came to his own conclusion, based on the evidence presented at the state court proceeding, that there existed clear and convincing evidence of fraud. A Bankruptcy Judge reaching an independent conclusion on such facts must base his or her judgment on reliable evidence, *see In re Tilbury*, 74 B.R. 73 (9th Cir. BAP 1987), *aff'd without op., In re Tilbury*, 851 F.2d 361 (9th Cir.1981); *In re Houtman*, 568 F.2d 651, 654 (9th Cir.1978). The evidence on which the Bankruptcy Judge relied in this case is deemed reliable by virtue of the fact that much of the same evidence which proved contempt also proves fraud.

In order for a creditor to prove fraud, and thus establish the nondischargeability of a debt, "a creditor must prove that: the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation." *In re Hunter*, 780 F.2d 1577 (11th Cir.1986). The Bankruptcy Judge found these elements of fraud in the proceedings of the contempt case. This court agrees that the state court, in examining the contempt issue, necessarily exposed the elements of fraud.

The first element, a false representation with the purpose and intention of deceiving the creditor, is often the most difficult to prove. "Courts recognize that fraudulent intent is difficult to prove because it is subjective. Consequently, they have developed ... rules to facilitate its proof. One rule is that ... fraudulent intent [may be

proved] by circumstantial evidence." *United States v. Foshee*, 578 F.2d 629, 633, fn. 8 (5th Cir.1978) (*quoting* Comment, *Survey of the Law of Mail Fraud*, 1975 Ill.L.Forum 237, 242), *aff'd*, 606 F.2d 111 (5th Cir.1979), *cert. den.*, 444 U.S. 1082, 100 S.Ct. 1036, 62 L.Ed.2d 766 (1980). *See also Delozier v. First Nat. Bank of Gatlinburg*, 113 F.R.D. 522, 524 (E.D.Tenn.1986). Another such rule is that "subsequent acts of a similar nature are admissible as proof of intent...." *United States v. Mancuso*, 444 F.2d 691, 695 (5th Cir.1971).

In this case, Plaintiff himself has provided much of the evidence for the false representation element. In the state court proceeding, Plaintiff claimed that he had $7,500.00 in cash at the very time that he insisted that his wife must sign over her interest in the house in order to receive the overdue $6,000.00. Clearly, Defendant need not have signed over the house, her last bargaining chip, if Plaintiff already had the cash to pay the $6,000.00 then due. In addition, the facts adduced in the state court proceedings make it evident that Plaintiff gave Defendant the promissory note for the remaining $7,500.00 owed only after Plaintiff had obtained title to the house. Even then, Defendant had to urge Plaintiff to deliver the note before he would agree to deliver it. Furthermore, when the note finally was delivered, it was pre-signed, so that Defendant could not verify the authenticity of the signature. Of course, Plaintiff later used this fact to deny that the signature was genuine.

However, the contempt proceeding was not the first instance wherein Plaintiff denied the existence of a debt to his former wife. On at least one previous occasion Defendant was forced to sue Plaintiff to recover on a debt[1]. Furthermore, Plaintiff had five years to pay the $7,500.00 debt and never paid one cent due. This flies in the face of Plaintiff's deposition testimony wherein Plaintiff claims that he periodically set aside cash from his job at MARTA and his security systems business, and that his

---

1. That case was settled by Plaintiff in this case paying Defendant in this case less than half of

the amount allegedly owed.

wife readily gave him money to pay back a debt. Thus, this court agrees with the Bankruptcy court's finding that Plaintiff had the requisite fraudulent intent.

The remaining elements of fraud, necessary to avoid the discharge of a debt in bankruptcy, are readily apparent from the proceedings of the state court. The element of reliance is found in the state court's finding of fact number 12 that "Edelkind knew that Alderman, in conveying her interest in the marital residence to Edelkind, was relying upon Edelkind's representations to her." Even without this finding, however, it is evident from the state court transcript that Defendant was relying on Plaintiff's representations that the transfer of ownership of the home was necessary for the $6,000.00 debt to be paid. It is also evident that Defendant was relying on Plaintiff's representations that the transfer of home ownership would result in Defendant receiving a $7,500.00 note that would be worth at least $7,500.00 plus interest. This court also finds that Defendant's reliance was reasonable in that she took a promissory note for the transfer of home ownership, and she insisted that Plaintiff initial the pre-signed note in her presence. Finally, the element of loss is present because if this debt is deemed dischargeable, the fraud will be complete and Defendant will have received nothing on the note, and only $6,000.00 for her $13,500.00 share of the home. Moreover, the loss will likely be absolute, given that Plaintiff has transferred 100% ownership of his current house to his new wife.

As the record demonstrates clear and convincing evidence of fraud, this court holds that the Bankruptcy Judge's order of nondischargeability was not in error.

Accordingly, the order of the Bankruptcy Judge is AFFIRMED.

SO ORDERED.