James Lee **PRINCIPE**, Principe Danna, Inc., Norman Cooper and Paul H. Ittleman, Plaintiffs,

v.

**CROSSLAND SAVINGS, FSB**, Maurice L. Reissman, Frank A. Dellomo, John Sadlik, Bradley Hemingway, Donald E. White, Jr., Ramesh C. Gupta and Jonathan G. Mutuscak, Defendants.

No. 89 CV 3645 (ILG).

United States District Court, E.D. New York.

March 5, 1993.

Wolf, Popper, Ross, Wolf & Jones by Lester L. Levy, Robert C. Finkel, Abbey & Ellis by Ralph Ellis, Lee Squitieri, Bernstein, Litowitz, Berger & Grossman by Edward A. Grossman, New York City, for plaintiffs.

Duker & Barrett by David A. Barrett, New York City, for F.D.I.C.

## MEMORANDUM AND ORDER

CADEN, United States Magistrate Judge.

This lawsuit is a consolidated class and derivative action against CrossLand Savings, FSB ["CrossLand"], a federally chartered capital stock savings bank, and certain former officers and directors of CrossLand ["the individual defendants"]. By order dated November 25, 1992, United States District Judge Leo I. Glasser referred this case to the undersigned for all pretrial purposes. The parties are presently before the court on plaintiffs' motion to enforce a subpoena served upon the Federal Deposit Insurance Corporation ["FDIC"].

### FACTS

The consolidated complaint filed on April 10, 1990 contains class action claims against CrossLand and the individual defendants for fraud and negligent misrepresentation in connection with the purchase of CrossLand securities. The complaint also contains derivative claims against the individual defendants for breach of fiduciary duty.

The allegations in this case depict a scheme among the defendants to issue materially false and misleading statements and to fail to disclose material facts regarding almost every aspect of CrossLand's operations in order to inflate the price of CrossLand securities. According to the complaint, CrossLand allegedly overstated its earnings, assets and net worth by: maintaining inadequate loan loss reserves; unreasonably accounting for "goodwill" assets resulting from CrossLand's subsidiary acquisitions; and failing to disclose known adverse effects on its operations resulting from legislation known as the Financial Institutions Reform, Recovery, and Enforcement Act ["FIRREA"], 12 U.S.C. § 1821, *et seq.*

In November 1990, plaintiffs served a third-party subpoena on the FDIC requesting the production of the following categories of documents:

1. All documents constituting, referring to, or relating to examinations and/or reports of examination of CrossLand.

2. All documents constituting, referring to, or relating to memoranda of understanding or other agreements between the FDIC, or any other governmental authority responsible for regulating banking entities, or as is otherwise required by law.

3. All documents provided by CrossLand to the FDIC pursuant to memoranda of understanding or other agreements with the FDIC, or any other governmental authority responsible for regulating banking entities, or as is otherwise required by law.

4. All documents constituting, referring to, or relating to CrossLand's reports of compliance with FDIC regulations or restrictions, or the regulations or restrictions of any other bank regulatory authorities.

5. All documents concerning, referring to, or relating to CrossLand's classification of any assets as non-performing loans, non-performing assets, or non-performing real estate.

6. All documents concerning, referring to, or relating to CrossLand's reserves for bad loans, and CrossLand's policies and procedures for writing off bad loans.

7. All documents concerning, referring to, or relating to CrossLand's compliance with FDIC or other bank regulatory agencies' capital requirements, including but not limited to CrossLand's ability to pay dividends to its stockholders.

The FDIC responded to the subpoena with six objections. In compliance with administrative regulations, plaintiffs wrote a letter to the FDIC on August 13, 1991, describing the history of the litigation and addressing their objections to the subpoena. The FDIC did not respond.

In January 1992, the Office of Thrift Supervision ["OTS"] found CrossLand to be in an unsound condition and closed the bank, appointing the FDIC as receiver. Unable to locate a suitable purchaser for CrossLand's assets, the FDIC organized a new entity, CrossLand Federal Savings, as a federal mutual savings bank with the FDIC as its sole member. CrossLand Federal acquired substantially all of the assets and some of the liabilities of the failed CrossLand, and the FDIC made a cash infusion of $1.2 billion dollars. The FDIC plans to make the new entity profitable and resell CrossLand Federal.

In July 1992, plaintiffs brought the instant motion to enforce the November 1990 subpoena. The FDIC opposes the production of these documents on the ground that they are protected by a bank examination privilege. In their reply papers, plaintiffs limited the scope of discovery sought, to:

1. reports of examinations provided by the FDIC to CrossLand; and

2. factual portions of notes and memoranda of communications and correspondence between, on the one hand, the FDIC, and on the other, CrossLand, its directors, officers, and employees, and other third parties, concerning the following:

a. CrossLand's compliance with federal capital requirements, including its inclusion of Series A and B preferred stock in its capital basis;

b. CrossLand's ownership and operations of non-banking businesses;

c. CrossLand's growth through the opening of new branches and expansion into Utah and New Jersey;

d. CrossLand's accounting for "goodwill" arising from its acquisition of various bank and non-bank subsidiaries;

e. CrossLand's classification of investments in high yield "junk" bonds as "loans" rather than "securities investments";

f. the impact on CrossLand of FIR-REA;

g. the adequacy of CrossLand's loan loss reserves;

h. the classification of CrossLand's loans as non-performing, non-accruing,

in substance foreclosure, or troubled debt restructuring; and

i. CrossLand's ability to pay dividends and determination to discontinue payment of dividends, created during or concerning the "Class Period".

## DISCUSSION

### I. THE BANK EXAMINATION PRIVILEGE

■ Government deliberations have long been protected by a qualified privilege. The privilege is supported by a dual rationale. *In re Franklin National Bank Securities Litigation ["Franklin National Bank"]*, 478 F.Supp. 577, 581 (E.D.N.Y.1979). On the practical side, "effective and efficient governmental decision making requires a free flow of ideas among government officials and ... inhibitions will result if officials know that their communications may be revealed to outsiders." *Id.* at 581. In addition, the doctrine of separation of powers forbids probing by the courts into the mental processes behind governmental decision-making. *Id.; see also United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941); *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586–87 (D.C.Cir.1985).

■ Under the penumbra of government deliberations, courts have recognized a privilege for materials relating to bank examination reports. *See, e.g., In re Subpoena Served Upon the Comptroller of the Currency, and the Secretary of the Board of Governors of the Federal Reserve System ["Fleet"]*, 967 F.2d 630, 633 (D.C.Cir.1992); *Seafirst Corp. v. Jenkins*, 644 F.Supp. 1160, 1163–64 (W.D.Wash.1986), *aff'd* [1986–87] Fed.Sec. L.Rep. (CCH) para. 92,862 (D.D.C. July 18, 1986)[1]; *Delozier v. First National Bank of Gatlinburg ["Delozier"]*, 113 F.R.D. 522, 525 (E.D.Tenn.1986); *Franklin National Bank*, 478 F.Supp. at 580–82. The Court of Appeals for the District of Columbia has recently expounded on the practical rationale for the bank examination privilege:

Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency.... Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Fleet*, 967 F.2d at 633.

Nevertheless, information regarding bank examinations is not wholly outside the scope of permissible discovery. To begin, the privilege applies only to the opinions or recommendations of government officials; it does not protect factual materials. *See, e.g., Environmental Protection Agency v. Mink*, 410 U.S. 73, 90, 93 S.Ct. 827, 837, 35 L.Ed.2d 119 (1973); *Fleet*, 967 F.2d at 633; *Franklin National Bank*, 478 F.Supp. at 581.

■ In addition, the bank examination privilege is qualified and therefore may be overridden when the public interest favors disclosure. *Fleet*, 967 F.2d at 633; *Forstmann Leff Associates, Inc. v. American Brands, Inc. ["Forstmann Leff"]*, 1991 WL 168002 at *3, 1991 U.S.Dist. LEXIS 11390 at *5 (S.D.N.Y. August 16, 1991); *Franklin National Bank*, 478 F.Supp. at 582. In weighing the competing interests of privilege versus disclosure, this district has considered five factors: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Frank-*

---

**1.** The decision of the United States District Court for the District of Columbia adopts the Report and Recommendation of United States District

Judge Barbara Rothstein of the Western District of Washington, serving as Special Master.

*lin National Bank,* 478 F.Supp. at 583. *See also Fleet,* 967 F.2d at 634; *Forstmann Leff,* 1991 WL 168002 at *3, 1991 U.S.Dist. LEXIS 11390 at *7–8.

## II. DISCOVERY OF BANK EXAMIN-ER'S REPORTS

### A. *Applicability of the Privilege*

■ The first set of documents requested by plaintiffs is the reports of examinations provided by the FDIC to CrossLand. The FDIC is empowered to appoint examiners to review bank records in order to facilitate the FDIC's supervision and regulation of insured financial institutions. *See* Affidavit of John W. Stone, sworn to November 12, 1992, at 1–3. These periodic examinations involve a thorough review of a wide range of documents, and culminate in a report recommending supervisory action where necessary. *Id.* at 2–3.

Plaintiffs assert that bank examination reports are primarily factual and therefore not privileged. The FDIC, however, argues that the reports consist primarily of the examiners' opinions, recommendations and analyses concerning CrossLand. Further, the FDIC notes that the dissemination of these reports will frustrate their very purpose because of the chilling effect on the willingness of bank employees to be candid.

Several courts have addressed the question of whether bank examination reports and related correspondence are factual or deliberative. It is very persuasive that some district courts have actually examined bank examiners' reports *in camera* and found them to be all or partially factual. *See, e.g., Seafirst Corp. v. Jenkins,* 644 F.Supp. at 1163; *Delozier,* 113 F.R.D. at 525 (report redacted to leave only factual portions); *Franklin National Bank,* 478 F.Supp. at 585 (same).

In addition, the FDIC's argument that the examiners' process of selecting facts to be included in the reports is, in itself, an integral part of the deliberative process, and therefore protected from disclosure, has been expressly rejected by *Seafirst Corp. v. Jenkins,* 644 F.Supp. at 1163, and *Franklin National Bank,* 478 F.Supp. at 583. The dis-

trict court in *Franklin National Bank* held that the report of a bank examiner was "primarily reportorial and expository, not deliberative." 478 F.Supp. at 585.

Similarly, the court in *Seafirst Corp. v. Jenkins* held that the statements characterized by the banking agency as opinions or professional judgment were nothing more than "expert interpretations of facts" and therefore not within the scope of the privilege: 478 F.Supp. at 1163. The court further found nothing in the bank examiners' reports to be "predecisional" or "deliberative" because, where the government deliberations privilege "contemplate[s] documents that anticipate and address the possible adoption of some decision or policy", the report at issue "is not a decision. It does not announce any action or policy...." *Id.* at 1163–64.

Accordingly, the undersigned finds that the bank examination reports provided by the FDIC to CrossLand to be factual either in whole or in part. The next step in such a case would normally be the submission of the documents for *in camera* review to permit the court to determine which portions of the reports are factual. *See, e.g., In re Subpoena Duces Tecum Served Upon the Office of the Comptroller of the Currency ["Citizens First Bancorp"* ], 151 F.R.D. 1 (D.D.C.1992) (attached as Exhibit G to Plaintiffs' Reply Memorandum of Law, dated January 20, 1993); *Franklin National Bank,* 478 F.Supp. at 582. However, review is not necessary in this case because the undersigned further finds that, even if portions of the bank examination reports are privileged, the privilege is overridden by the public interest in disclosure.

### B. *Balancing of Interests*

■ Assuming that the bank examination reports at issue are within the scope of the government deliberations privilege, the government's interest in non-disclosure must be weighed against the public interest according to the five factors outlined in *Franklin National Bank.*

1. Relevance—the FDIC does not contest the relevance of the bank examination report to plaintiffs' claims of securities fraud and breach of fiduciary duty. These reports, which were provided by the FDIC to Cross-Land's senior management, are relevant to the individual defendants' knowledge of CrossLand's problems and the alleged misrepresentations and breach of fiduciary duty at issue. The undersigned also agrees with plaintiffs' position that the documents are potentially relevant to proving defendants' scienter, a necessary element of fraud under the securities laws.

Moreover, as noted in *Franklin National Bank*, the failure of a major bank such as CrossLand threatens the health of the nation and the international economic community:

> The inability of the bank regulatory system to detect and prevent that failure requires thorough exploration. A strong public interest thus demands that the confidential sections be disclosed to fully air the story behind the bank's collapse and to help evaluate the adequacy of existing bank examination procedures.

478 F.Supp. at 587. This reasoning is even more persuasive today than in it was 1979, in light of the banking crises of the late 1980's.

2. Availability of other evidence—the FDIC argues that plaintiffs have not shown need for the bank examiners reports at issue, and that the information contained in them has already been provided; therefore, plaintiffs should not be awarded "the fruits of the FDIC's labors in investigating mismanagement at CrossLand." However, a judge of this court has held that "[t]he Examination Reports provide a unique and objective chronicle of the financial decline of [the bank]; no satisfactory substitute exists." *Franklin National Bank*, 478 F.Supp. at 586.

Further, as noted above, the documents at issue are relevant not only as proof of mismanagement, but more importantly, as proof of knowledge or recklessness on the part of the defendants. In that regard, the information contained in the bank examination reports provided by the FDIC is relevant, not only for its substance, but also because it appeared in the reports themselves.

3. Seriousness of the litigation and the issues involved—this case centers around allegations that the senior management of CrossLand engaged in fraud on a massive scale to inflate artificially the price of Cross-Land's publicly traded securities. In *Citizens First Bancorp*, a case involving similar claims, the court found that "[s]uch allegations are undoubtedly serious, and raise fundamental issues regarding public confidence in the fairness of the financial markets." *Memorandum and Order* at 3. The undersigned finds the issues and stakes in this case to be serious and complex. *See Forstmann Leff*, 1991 WL 168002 at *4, 1991 U.S.Dist. LEXIS 11390 at *9.

4. Role of the government in the litigation—although not technically a party to this case, as noted above the FDIC had regulatory duties with respect to CrossLand and its collapse. *See Citizens First Bancorp, Memorandum and Order* at 3. Moreover, as receiver of the failed CrossLand and conservator of the new CrossLand Federal, the FDIC will benefit if defendant prevails in this action. *See Forstmann Leff*, 1991 WL 168002 at *4, 1991 U.S.Dist. LEXIS 11390 at *10. Since the FDIC has a direct interest in the outcome of the litigation, disclosure is favored. *Id.*

5. Future timidity by government employees—the FDIC correctly argues that it has a strong interest in maintaining the confidentiality of its bank examination reports because disclosure may inhibit the candor of bank employees and thereby decrease the FDIC's effectiveness in detecting potential problems. However, courts that have considered this issue do not find that it outweighs the public interest in disclosure because bank officials are obligated by law to cooperate with examiners. *See, e.g., Citizens First Bancorp, Memorandum and Order* at 3–4; *Forstmann Leff*, 1991 WL 168002 at *4, 1991 U.S.Dist. LEXIS 11390 at *10–11; *Seafirst Corp. v. Jenkins*, 644 F.Supp. at 1164.

The FDIC also opposes production of the bank examination reports on the ground that disclosure of this information could irreparably jeopardize the FDIC's plans to reorganize CrossLand Federal as a profitable entity by provoking a run on the bank by deposi-

tors. *See Delozier,* 113 F.R.D. at 526. However, the undersigned finds this concern to be greatly exaggerated for several reasons. First and foremost, the protective order in place in this litigation will ensure that the produced documents remain confidential. To the extent that the FDIC is arguing that the protective order is insufficient to prevent the release of documents to the public, its remedy is to seek modification of the order, not to refuse to produce relevant documents.

In addition, CrossLand Federal is a new entity, unrelated to the failed CrossLand, the defendant in this action. Finally, the collapse of CrossLand and the problems leading thereto have already been the focus of much publicity. The disclosure of additional evidence of unsound banking practices in the past will not undermine confidence in the bank any more than CrossLand's insolvency and receivership already has.

At this point it should be noted that an overwhelming majority of courts that have considered the disclosure of reports of bank examiners have ruled in favor of their production, and the FDIC has failed to cite any cases to the contrary. *See, e.g., Citizens First Bancorp, Memorandum and Order* at 4; *Forstmann Leff,* 1991 WL 168002 at * 2, 1991 U.S.Dist. LEXIS 11390 at *11; *Delozier,* 113 F.R.D. at 526; *Seafirst Corp. v. Jenkins,* 644 F.Supp. at 1164; *Franklin National Bank,* 478 F.Supp. at 589. *See also Fleet,* 967 F.2d 630 (reversing decision of the district court due to error in ordering production of the documents solely on the ground that they had previously been made available to the bank, and remanding for consideration and balancing of factors relevant to overriding of privilege; also citing *Seafirst Corp. v. Jenkins* and *Franklin National Bank* for the proposition that at least portions of bank examination reports have been held primarily factual).

The production of these reports does not, as the FDIC claims, vitiate the existence of the bank examination privilege. The privilege clearly protects from disclosure analyses, opinions and recommendations contained in internal agency documents relating to bank examinations, and courts will continue to withhold from discovery information which

is not primarily factual. *See, e.g., Citizens First Bancorp, Memorandum and Order* at 4; *Delozier,* 113 F.R.D. at 527; *Franklin National Bank,* 478 F.Supp. at 588–89.

Accordingly, plaintiffs' motion to enforce the subpoena served on the FDIC is granted with respect to the bank examination reports provided by the FDIC to CrossLand.

## II. COMMUNICATIONS AND CORRESPONDENCE BETWEEN THE FDIC AND CROSSLAND OR THIRD PARTIES

█ The second category of documents sought by plaintiffs in their modifications to the subpoena consist of "factual portions of notes and memoranda of communications and correspondence between, on the one hand, the FDIC and, on the other hand, CrossLand, its directors, officers and employees, and other third parties" concerning nine specifically enumerated subjects. *See* supra at 446–447. As plaintiffs have requested only the factual portions of such documents, the bank examination privilege does not protect their disclosure. Further, the documents requested by plaintiff are limited to those provided to CrossLand or third parties, and therefore do not intrude on "the internal, deliberative, decision-making processes of government." *Delozier,* 113 F.R.D. at 527.

Accordingly, the undersigned need not weigh the interests of the plaintiffs and the public in disclosure against the government's need for confidentiality. *Seafirst Corp. v. Jenkins,* 644 F.Supp. at 1164. The FDIC's arguments regarding the necessity of confidentiality and plaintiffs inadequate showing of a need for these documents are irrelevant because only factual portions are at issue on this motion.

Further, the documents requested are relevant to plaintiffs' claims. Plaintiffs have narrowed their request, conforming the nine subjects on which they seek discovery to the allegations in their complaint. Therefore, plaintiffs' motion to enforce the subpoena with respect to factual portions of correspondence and communications is granted. The FDIC will redact any such documents to eliminate its analyses, opinions and recom-

mendations. Any disputed portions are to be submitted to the undersigned for *in camera* review.

### CONCLUSION

For all of the foregoing reasons, plaintiffs motion to enforce the subpoena served upon the FDIC with the modifications contained in their Reply Memorandum of Law is granted.

SO ORDERED.